IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | |
|---|---|
| N.S., <br><br> *Plaintiff,* <br><br> v. <br><br> **COMMISSIONER OF SOCIAL SECURITY,** <br><br> *Defendant.* | **CIVIL ACTION NO.** <br> **3:23-cv-00123-TES-MSH** |

**ORDER GRANTING PLAINTIFF'S MOTION FOR ATTORNEY'S FEES
UNDER THE EQUAL ACCESS TO JUSTICE ACT**

Before the Court is Plaintiff N.S.'s Motion for Attorney's Fees [Doc. 10], under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, following the remand of her claim for Social Security benefits. *See* [Doc. 15]. As explained in further detail below, despite the Commissioner of Social Security's objections, the Court finds that Plaintiff's requested rates and hours expended in this case are reasonable and **GRANTS** Plaintiff's Motion for Attorney's Fees [Doc. 10].

BACKGROUND

Plaintiff filed a Complaint on November 1, 2023, appealing the Social Security Administration's denial of her claim for disability benefits. [Doc. 1]. The Commissioner of Social Security filed an Answer on December 19, 2023, along with a 2,214-page certified transcript of the record in this case. [Doc. 7]; [Doc. 8]. Plaintiff replied on

January 18, 2024, filing a Brief in Support of Reversal and Remand of the Commissioner's Final Decision. [Doc. 9]. Then, on motion by the Commissioner, the Court issued an Order on March 13, 2024, reversing the Commissioner's decision and remanding the case to the Commissioner for further proceedings. [Doc. 15]. Plaintiff now seeks attorney's fees under the EAJA. [Doc. 17].

## DISCUSSION

### A.  Legal Standard

Under the EAJA, a court must award an eligible party "reasonable attorney fees" it incurred in a non-tort civil action brought by or against the United States. 28 U.S.C. § 2412(d)(1)(A), (d)(2)(A). A party is eligible for an award of attorney's fees under the EAJA if it files an application within 30 days of final judgment showing that: (1) the claimant is a "prevailing party"; (2) the amount sought, including an itemized justification for the amount requested; and (3) the claimant's net worth was no more than $2,000,000 at the time they filed the complaint. *See* 28 U.S.C. § 2412(d); *Pollgreen v. Morris*, 911 F.2d 527, 532 (11th Cir. 1990) (citing *Canady v. Sullivan*, 893 F.2d 1241, 1243 (11th Cir. 1988)).

A court must award attorney's fees to an eligible claimant unless the government proves that its "position . . . was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A); *see Stratton v. Bowen*, 827 F.2d 1447, 1450 (11th Cir. 1987) ("The government bears the burden of showing that its position

was substantially justified."); *Brungardt v. Comm'r of Soc. Sec.*, 234 F. App'x 889, 891 (11th Cir. 2007) (citing 28 U.S.C. § 2412(d)(1)(A)). The decision whether to award attorney's fees under the EAJA is committed to the district court's discretion. *See Brungardt*, 234 F. App'x at 890 (citing *Pierce v. Underwood*, 487 U.S. 552, 559 (1988)).

B.     **Reasonableness of Fees Requested**

Plaintiff requests attorney's fees totaling $17,105.19, reflecting 56 hours of work on this case before preparing her Reply in support of this Motion and 12.6 hours preparing her Reply. [Doc. 17]; [Doc. 19]. The Commissioner does not dispute that Plaintiff's counsel, Mr. Heber, is entitled to receive a fee but objects to the requested amount on two grounds: (1) that "the number of hours that [Mr. Heber] spent reviewing the record and preparing the brief is excessive" and (2) that Mr. Heber's "billing entries are too vague." [Doc. 18, pp. 2–3, 5]. As an initial matter, the Court finds—and the parties do not dispute—that Plaintiff has established her eligibility for an award of attorney's fees, that the Commissioner's position was not "substantially justified," and that no "special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A); *see Brungardt*, 234 F. App'x at 891. Thus, only issue before the Court is whether Plaintiff's requested fee is reasonable. *See* 28 U.S.C. § 2412(d)(1)(A).

Courts use the lodestar method to determine the amount of a reasonable fee under the EAJA. *Norman v. Hous. Auth. Of City of Montgomery*, 836 F.2d 1291, 1299 (11th Cir. 1988). The lodestar method requires courts to multiply the number of "hours

3

reasonably expended by a reasonable hourly rate." *Id.* (citing *Hensley*, 836 F.2d at 433. The party seeking an award of attorney's fees "bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates." *Norman*, 836 F.2d at 1303 (citing *Hensley*, 836 F.2d at 437).

"An award of attorney's fees should be commensurate with the degree of a prevailing party's success." *Jean v. Nelson*, 863 F.2d 759, 771 (11th Cir. 1988), *aff'd sub nom. Comm'r, I.N.S. v. Jean*, 496 U.S. 154 (1990); *Hensley*, 836 F.2d at 435–36. "Where a plaintiff has obtained excellent results, [their] attorney should recover a fully compensatory fee," which will normally "encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified." *Jean*, 863 F.2d at 771. "If, on the other hand, a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount," "even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith." *Id.* The "most critical factor" in calculating an award of attorney's fees under the Equal Access to Justice Act "is the degree of success obtained." *Id.*; *Hensley*, 461 U.S. at 436.

### 1. Reasonable Hourly Rate

The first step in computing the lodestar is to determine the reasonable hourly rate for Mr. Heber's work on this case. In her Motion, Plaintiff requests the statutory rate under the EAJA with cost-of-living adjustments: $244.62 per hour for work done in

2023 and $249.80 per hour for work done in 2024. [Doc. 17-1, p. 4]; *see* 28 U.S.C. § 2412(d)(2)(A); *Meyer v. Sullivan*, 958 F.2d 1029, 1032-33 (11th Cir. 1992). The Commissioner does not dispute the reasonableness of Plaintiff's proposed hourly rates. *See* [Doc. 18].

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation," and "[t]he applicant bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates." *Norman*, 836 F.2d at 1299 (citations omitted). The Court "is itself an expert on [reasonable hours and rates] and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment." *Norman*, 836 F.2d at 1303 (quoting *Campbell v. Green*, 112 F.2d 143, 144 (5th Cir. 1940)). Having considered Plaintiff's request through the lens of its "own knowledge and experience," the Court finds Plaintiff's proposed hourly rates exceedingly reasonable. *Id.*; [Doc. 17-1, pp. 2–4].

### 2. Hours Reasonably Expended

The second step in calculating the lodestar is to determine the number of hours Mr. Heber reasonably expended in this case. According to Plaintiff, her counsel spent a total of 50 hours working on this case before preparing her Reply in support of this Motion—6 hours of work in 2023 and 50 hours of work in 2024. [Doc. 17, p. 1]; [Doc. 19, p. 10]. The Commissioner objects generally to the number of hours Mr. Heber logged in

5

this case and specifically objects that Mr. Heber spent an unreasonable amount of time reviewing the transcript and filing Plaintiff's brief and that several of Mr. Heber's billing entries "do not adequately describe the tasks performed to permit this Court or the Defendant to determine the reasonableness of [Mr. Heber's] hours." [Doc. 18, pp. 2–5].

A fee applicant must use "billing judgment" in calculating the number of hours their counsel reasonably expended. *Norman*, 836 F.2d at 1301 (citing *Hensley*, 836 F.2d at 434). If a fee applicant does not exercise billing judgment, "courts are obligated to do it for them." *ACLU of Ga. v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999). Courts may do so by excluding any "'excessive, redundant or otherwise unnecessary' hours," meaning that "the hours excluded are those that would be unreasonable to bill to a client and therefore to one's adversary *irrespective of the skill, reputation or experience of counsel*." *Id.* at 1301 (quoting *Hensley*, 836 F.2d at); *see, e.g.*, *Mobley v. Apfel*, 104 F. Supp. 2d 1357, 1360 (M.D. Fla. 2000) (finding that clerical hours and "time devoted to correcting one's own errors" were unreasonable); *Action on Smoking & Health v. Civ. Aeronautics Bd.*, 724 F.2d 211, 220–21 (D.C. Cir. 1984) (holding that "[h]ours are not reasonably expended if . . . an attorney takes extra time due to inexperience"). If a court finds the number of hours claimed to be excessive, it should "specifically explain which hours [are] disallowed and why an award for such hours would be improper." *Hill v. Seaboard Coast Line R. Co.*, 767 F.2d 771, 775 (11th Cir. 1985). "Generalized statements that the time spent was

6

reasonable or unreasonable . . . are not particularly helpful and not entitled to much weight." *Norman*, 836 F.2d at 1301. Because a "district court must be reasonably precise in excluding hours thought to be unreasonable or unnecessary, so should be the objections and proof from fee opponents." *Id.*

First, the Commissioner objects generally to Plaintiff's request, concluding that 56 hours of work on this case is "excessive" because "[t]he typical attorney work time expended in an EAJA case ranges between twenty (20) and forty (40) hours." [Doc. 18, p. 3 (first citing *Perkins v. Astrue*, No. 1:09-CV-60-WLS, 2011 WL 7794078, at *2 (M.D. Ga. Oct. 11, 2011); then citing *Marshall v. Astrue*, No. 7:09-CV-33-HL, 2011 WL 2604768, at *2 (M.D. Ga. May 10, 2011); and then citing *Flamboe v. Comm'r of Soc. Sec.*, No. 1:12-CV-606, 2013 WL 1914546, at *2 (W.D. Mich. May 8, 2013)]. To the extent that the Commissioner argues that Plaintiff's counsel spent too much time on this case by reference to the "[t]ypical attorney work time expended in an EAJA case," brought by other attorneys representing other clients in other cases, the Court affords this argument no weight. *See* [Doc. 18, p. 3]; *Norman*, 836 F.2d at 1301. A determination of reasonable fees under the EAJA "is dependent on the facts of each case, and courts have awarded attorney's fees above the typical range." *Marshall*, 2011 WL 2604768, at *2 (collecting cases).

Relatedly, to the extent that the Commissioner attempts to place a 40-hour cap on the time an attorney may invest in a social security appeal, that attempt fails for several reasons. First, and most fundamentally, the Court must determine the number of hours

7

Plaintiff's counsel reasonably expended based on the facts of *this* case. *See id.*; *Hill*, 767 F.2d at 775. While the "[t]he typical attorney work time expended in an EAJA case" may be one data point for the Court to consider, it does not replace the Court's "own knowledge and experience," nor does it relieve the Court of its obligation to "specifically explain which hours [are] disallowed and why an award for such hours would be improper." *Norman*, 836 F.2d at 1303 (quoting *Campbell*, 112 F.2d at 144); *Hill*, 767 F.2d at 775.

Further, even if the Court could discharge its duty by simply confirming that Mr. Heber spent a "typical" amount of time on this case, recent cases suggest that the typical range may be more than 20–40 hours. *See, e.g.*, *Tonya A. v. Comm'r of Soc. Sec.*, No. 3:20-CV-00028-RGV, 2022 WL 16709178, at *3 (N.D. Ga. July 11, 2022 (collecting cases and finding that spending 49.05 hours drafting an initial brief and 12.65 hours drafting a reply brief "was reasonable in light of the nearly 1,800-page transcript," among other things). Regardless, this portion of the Commissioner's argument relies on "generalized statement[s]" and fails to provide "reasonably precise . . . objections" to specific hours for which Plaintiff seeks compensation or "proof" that Plaintiff's request is unreasonable. *Norman*, 836 F.2d at 1301.

Also, the cases on which the Commissioner relies do not support his argument. The Commissioner leans heavily on *Perkins*, a 2011 case in which this Court cited *Patterson*, a Central District of California case, for the proposition that "[t]he typical

8

work time expended on an EAJA case ranges between [20] and [40] hours." *Perkins*, 2011 WL 7794078, at *2 (citing *Patterson v. Apfel*, 99 F.Supp.2d. 1212, 1214 n.2 (C.D. Cal. 2000)). But this Court's analysis did not end there. *Id.* It went on to examine the facts of that case to determine the reasonableness of the applicant's request. *Id.* Not to mention, as Plaintiff points out in her Reply, just a few months after this Court decided *Perkins*, the Ninth Circuit unequivocally rejected the Social Security Administration's position that *Patterson* limits attorneys to 20 to 40 hours of work in "routine" Social Security cases, "question[ed] the usefulness of reviewing the amount of time spent in other cases to decide how much time an attorney could reasonably spend on [a] particular case before the court," and held that a district court abused its discretion by applying "a de facto policy limiting social security claimants to twenty to forty hours of attorney time in 'routine' cases." *Costa v. Comm'r of Soc. Sec. Admin.*, 690 F.3d 1132, 1136 (9th Cir. 2012); *see* [Doc. 19, p. 2].

The Court finds the other cases provided by the Commissioner similarly unhelpful. For example, in *Marshall*, like in *Perkins*, this Court cited *Patterson* for the same "20–40 hours" proposition. *Marshall*, 2011 WL 2604768, at *2 (citing *Patterson*, 99 F.Supp.2d at 1214 n.2). In the very next sentence, the Court noted that "a determination of reasonable fees under the AJA is dependent of the facts of each case" and went on to find "that 42.90 attorney work hours [was] generally reasonable for [that] particular case." *Id.* As for *Flamboe*, the Commissioner appears to represent that the Western

District of Michigan held that "the 'upper limit of reasonable time' to review the record, conduct necessary research, and prepare and file a brief is 30 hours." *See* [Doc. 18, p. 3 (citing *Flamboe*, 2013 WL 1914546, at *2)]. That is not so. What the Commissioner appears to frame as the *Flamboe* court's holding is only a factual finding that "[t]he upper limit of a reasonable time to review th[at] administrative record, conduct whatever legal research was necessary, and prepare and file plaintiff's brief was 30 hours." *Flamboe*, 2013 WL 1914546, at *2 (emphasis added). The court's order did not say how long the record was, nor did it purport to establish a hard-and-fast rule. *See id.*

Second, the Commissioner objects broadly to "the number of hours that Plaintiff's counsel spent reviewing the record and preparing the brief." [Doc. 18, p. 4]. As for Mr. Heber's review of the certified transcript, the Commissioner argues that "[w]hile the transcript in this case was over 2,200 pages, the length of the transcript does not justify Plaintiff's request" for compensation for 13 hours of work. [*Id.* at pp. 3–4]. The Commissioner doesn't say what amount of time would have been reasonable.

Mr. Heber logged 8.2 hours on January 11, 2024, "review[ing] the certified administrative transcript and t[aking] detailed notes on record evidence and possible arguments for briefing," and he continued that task for 4.8 hours the next day, for a total of 13 hours. [Doc. 17-3, Heber Aff., p. 5]. Mr. Heber did not represent Plaintiff at the administrative level, but he churned through the transcript at a rate of nearly three pages per minute, spending an average of 21 seconds on each page. *See* [Doc. 19, p. 3].

10

In the Court's experience, that appears reasonable. *Id.*; *see Norman*, 836 F.2d at 1303 (quoting *Campbell*, 112 F.2d at 144).

Aside from the Commissioner's assertion that "Plaintiff's request for 46.8 hours to review the record and write a brief exceeds what is normally allowed for *entire* cases," the Commissioner provides only two unpublished decisions from the Middle District of Florida to support his objection to the amount of time Mr. Heber spent reviewing the transcript. [*Id.* at pp. 4–5 (first citing *O'Neill v. Comm'r of Soc. Sec.*, No. 6:19-CV-2359-GKS-EJK, 2021 WL 1929736, at *3-4 (M.D. Fla. Apr. 13, 2021), *report and recommendation adopted*, 2021 WL 1925545 (M.D. Fla. May 13, 2021); and then citing *Garverick v. Comm'r of Soc. Sec.*, No. 2:15-CV-385-CM, 2017 WL 1838483, at *4 (M.D. Fla. May 8, 2017))]. To the extent that either of those cases are relevant, they are factually dissimilar to this case: As Plaintiff points out in her Reply, unlike the attorneys in *O'Neill* and *Garverick*, Mr. Heber did not represent Plaintiff at the administrative level and thus familiarized himself with the transcript for the first time before filing this case. *See* [Doc. 19, p. 3]; *O'Neill*, 2021 WL 1929736, at *3; *Gaverick*, 2017 WL 1838483, at *3. Without more, the Court cannot say that an award for 13 hours spent reviewing a 2,214-page transcript "would be improper." *Hill*, 767 F.2d at 775.

As for the time Mr. Heber spent drafting Plaintiff's brief, the Commissioner appears to object because of the length of the brief and the complexity of the issues it raised. [Doc. 18, p. 4]. As the Commissioner acknowledges, Plaintiff's brief was 40 pages

11

long. *Id.*; *see* [Doc. 9]. It is unclear to the Court is why the Commissioner highlights that "the length of Plaintiff's [40-page] brief would have been reduced to slightly over 30 pages" if Mr. Heber had written it in Times New Roman 12-point font instead of 14-point, before comparing Plaintiff's brief to a 40-page brief filed in the Middle District of Florida, where 14-point is the minimum allowed font size for Times New Roman. [Doc. 18, p. 4 (citing [Doc. 17-3, Heber Aff., p. 3])]; *Lucas-Williamson v. Saul*, No. 8:18-CV-2641-EAK-AAS, 2019 WL 6792458, at *1-2 (M.D. Fla. Nov. 6, 2019); M.D. Fla. R. 1.08(b). Implicit in the Commissioner's arguments is the notion that a brief's length is proportional to the time spent writing it, but in the Court's experience, the opposite is often true. Because the Court sees no reason to use the length of a brief as a proxy for the time required to draft it, the Court gives the length of Plaintiff's brief little weight in this analysis.

And as for the complexity of the issues Plaintiff raised in her brief, the Commissioner argues that they "were not unusually complex." [Doc. 18, p. 4]. Even if a brief raises "very routine" issues, that does not necessarily justify a reduction of hours. *See, e.g., Shikery M. v. Comm'r of Soc. Sec.*, No. 3:19-cv-00050-RGV, 2021 WL 9409164, at *3 (N.D. Ga. Feb. 18, 2021) (declining to reduce hours expended reducing 2,000-page transcript to a 25-page brief that alleged numerous errors and achieved a good result, even though the Commissioner described the issues as "very routine"). The Commissioner doesn't argue that the issues raised in Plaintiff's brief were simple, much

less "very routine." *See id.* And beyond describing the general subject matter of the issues Plaintiff raised in her brief, the Commissioner does not explain why these issues "were not unusually complex." *See* [*id.*]. Of course, Plaintiff takes issue with the Commissioner's characterization, describing each of the five issues in detail and explaining why each was at least somewhat factually or legally complex. *See* [Doc. 19, p. 8]. Mr. Heber logged 33.8 hours reducing a 2,214-page transcript to a 40-page brief that raised five issues and achieved excellent results, and the Court finds that the issues raised in that brief not so simple as to justify a reduction in Mr. Heber's hours. *See* [Doc. 17-3, Heber Aff., p. 5].

Third, the Commissioner objects to several of Mr. Heber's billing entries, arguing that they are too vague. [Doc. 18, p. 6]. The timesheet attached to Mr. Heber's affidavit contains an entry dated October 7, 2023, indicating that Mr. Heber spent 3.4 hours on "[a]ppeal feasibility review" and four entries (totaling 33.8 hours) dated January 15 through January 18, 2024, labeled "Prepared opening brief." [Doc. 17-1, Heber Aff., p. 2]. The Commissioner concludes that these entries "do not adequately describe the tasks performed to permit this Court or the Defendant to determine the reasonableness of Plaintiff's counsel's hours" and "requests that this Court reduce the time spent on "[a]ppeal feasibility review" by 1 hour . . . and reduce the time spent on reviewing the record and preparing the brief by 19 hours" without providing any further explanation as to why he cannot determine the reasonableness of Mr. Heber's hours or why the

13

Court should reduce Mr. Heber's hours by the amounts he requests. [Doc. 18, p. 5]. Plaintiff argues that the Commissioner "provides no explanation for his assertion and thus waives it." [Doc. 19, p. 10 (citing *L.B. v. Comm'r of Soc. Sec.*, No. 5:19-CV-00359-CHW, 2020 WL 13468844, at *7 (M.D. Ga. Aug. 26, 2020)].

Mr. Heber's time entries plainly indicate that he spent 3.4 hours reviewing the feasibility of this appeal and 33.8 hours preparing his opening brief. Even if the Commissioner did not waive this argument, Mr. Heber did not block bill or lump multiple tasks under single entries, nor were his time entries so vague "as to prevent the Court from being able 'to calculate with any precision the number of hours [he] devoted to a particular task.'" *K.G. v. Commr. of Soc. Sec.*, No. 119-CV-92-LAG-TQL, 2021 WL 8268032 (M.D. Ga. Nov. 15, 2021) (quoting *Barnes*, 168 F.3d at 429).

Finally, the Commissioner objects to billing entries, totaling 1.5 hours of tasks, which the Commissioner contends describe "clerical tasks." [Doc. 18, p. 6 (citing [Doc. 17-3, Heber Aff., p. 5])]. Tasks that are purely administrative, as opposed to involving lawyer expertise, are clerical tasks that "are not compensable as attorney's fees" under the EAJA. *Mobley*, 104 F. Supp. 2d at 1360 (M.D. Fla. 2000). Mr. Heber's timesheet contains one 6-minute entry labeled "Call with client regarding case," four six-minute entries labeled "Email with client regarding case," one twelve-minute entry labeled "Emails with client regarding case," and one 48-minute entry labeled "Assisted client with preparation of IFP motion." [Doc. 17-3, Heber Aff., p. 5]. The Commissioner argues

that because "the entries concerning the emails and phone call to the client do not provide any further details regarding the communication," they "appear to be clerical in nature." [Doc. 18, p. 6].

The Commissioner's assertion that Mr. Heber engaged in clerical work by assisting Plaintiff with her IFP application is conclusory and unsupported by any authority or argumentation. *See* [Doc. 18, p. 6]. An IFP application is an affidavit, made under penalty of perjury, that unsophisticated individuals often need assistance to complete. The time Mr. Heber spent assisting his client with that application is compensable under the EAJA, and the number of hours is abundantly reasonable. *See Sensat v. Berryhill*, No. 15-24727-CIV, 2018 WL 5257143, at *5 (S.D. Fla. Oct. 22, 2018). And the Commissioner provides no controlling authority or explanation of his suggestion that Mr. Heber must disclose details of his attorney-client communications to be compensated for the time he spent communicating with his client. *See* [Doc. 18, p. 6]. The Court finds that these billing entries do not reflect clerical tasks and that the times Mr. Heber logged assisting his client with an IFP application and communicating with his client are reasonable.

On top of Plaintiff's original request, Plaintiff also seeks $3,147.48 as compensation for the 12.6 hours Mr. Heber spent preparing her Reply, at a rate of $249.80. [Doc. 19, p. 1]. Considering that Defendant raised numerous arguments and cited several factually inapposite cases, the Court finds Plaintiff's additional fee request

15

reasonable. *See, e.g.*, *Courtney G. v. Comm'r, Soc. Sec. Admin.*, No. 2:21-CV-27-RWS, 2023 WL 2297453, at *5 (N.D. Ga. Feb. 28, 2023) (awarding 6.8 hours for an EAJA reply brief that responded to one argument). Thus, the Court finds Plaintiff's request for attorney's fees totaling $17,105.19, reflecting 68.6 hours of work on this case, reasonable. [Doc. 17]; [Doc. 19].

    C.    **<u>Assignment of Fees</u>**

A copy of an agreement between Plaintiff and her counsel under the EAJA is attached to Plaintiff's Motion for Attorney's Fees. [Doc. 17-2]. That agreement purports to "assign [Plaintiff's] right to seek attorney fees under the EAJA, and to receive any EAJA fees awarded, to Heber Law Firm." [*Id.*]. Plaintiff asks that the Commissioner accept Plaintiff's assignment of EAJA fees to counsel and pay Plaintiff's attorney directly if the United States Treasury Department determines that Plaintiff does not owe a federal debt. [Doc. 17, p. 1]. If Treasury determines that Plaintiff owes a debt, Plaintiff requests that any remaining payment be delivered to Plaintiff's counsel. [*Id.*].

However, this agreement is ineffective. Unquestionably, EAJA awards belong to prevailing plaintiffs. *See Astrue v. Ratliff*, 560 U.S. 586, 593–94 (2010). While it is true that attorney's fees awarded under the EAJA may be assigned, these awards are claims against the United States, and any assignment of them must satisfy the Anti-Assignment Act. *See* 31 U.S.C. § 3727. A claim against the United States may be assigned only (1) after the claim is allowed; (2) after the amount of the claim is decided; (3) after a

warrant for payment is issued; and (4) if the assignment specifies the warrant, is made freely, and is signed by two witnesses. 31 U.S.C. § 3727(b); *see also D.H.C. v. Comm'r of Soc. Sec.*, No. 5:18-cv-00141-TES-CHW, 2019 WL 5848062, at *1–*2 (M.D. Ga. Nov. 7, 2019); *Gooding v. Comm'r of Soc. Sec.*, No. 6:18-CV-348-Orl-37LRH, 2019 WL 5005435, at *2 (M.D. Fla. Sept. 20, 2019); *Gibson v. Colvin*, No. 4:03-CV-90, 2013 WL 2422611, at *6 (S.D. Ga. June 3, 2013). In addition to these four statute-based requirements, the person making the assignment "shall [also] acknowledge it before an official who may acknowledge a deed, and the official shall certify the assignment." 31 U.S.C. § 3727(b).

Plaintiff's attempt to assign her EAJA award to her counsel does not satisfy the Anti-Assignment Act. *See id.* First, the assignment was executed on October 26, 2023, the week before Plaintiff filed her Complaint against the Commissioner of Social Security, so it was not "made . . . after a claim [for attorney's fees was] allowed." *Id.*; *compare* [Doc. 1, p. 2], *with* [Doc. 17-2]. Second, Plaintiff's purported assignment does not mention a warrant for payment, lacks two witness signatures, and fails to include any acknowledgment before an appropriate official as well as that official's certification. 31 U.S.C. § 3727(b). Accordingly, the Court must award the fees directly to Plaintiff, not to her counsel.

The Commissioner may waive the Anti-Assignment Act's requirements and pay the EAJA fee award directly to Plaintiff's counsel. *See, e.g.*, *Gooding*, 2019 WL 5005435, at *2 (holding that "[t]he [G]overnment, though, may exercise its discretion to honor the

17

assignment if it determines that . . . Plaintiff does not owe a debt to the government");

*Arthur Pew Const. Co. v. Lipscomb*, 965 F.2d 1559, 1576 (1992) (holding that the Government may recognize the assignment of its obligations to another and waive the protection of anti-assignment statutes if it chooses). Such a decision, however, is for the Commissioner, not the Court.

## CONCLUSION

Accordingly, because Plaintiff has met her burden of establishing that she is entitled to an award of attorney's fees under the EAJA and of documenting the appropriate hours, the Court **GRANTS** Plaintiff's Motion for Attorney's Fees [Doc. 10] and **ORDERS** the Commissioner to compensate Plaintiff for $17,105.19. *Norman*, 836 F.2d at 1303.

**SO ORDERED**, this 22nd day of July, 2024.

S/ Tilman E. Self, III  
**TILMAN E. SELF, III, JUDGE**  
**UNITED STATES DISTRICT COURT**
